**Kurt F. PERWOLF, et al., Petitioners,**

v.

**IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent.**

**No. 83–2160.**

United States Court of Appeals,
Eighth Circuit.

Submitted May 14, 1984.

Decided Aug. 27, 1984.

---

Kathy Woodward Goss, Little Rock, Ark., Eugene J. Flynn, P.C., Dallas, Tex., for petitioners.

J. Paul McGrath, Asst. Atty. Gen., Thomas W. Hussey, Robert Kendall, Jr., Attys., Civ.Div., Washington, D.C., for respondent.

Before LAY, Chief Judge, and ROSS and FAGG, Circuit Judges.

LAY, Chief Judge.

This is an appeal from a decision of the Board of Immigration Appeals (the Board) denying a motion to reopen and reconsider an order of deportation. Jurisdiction is invoked pursuant to the Immigration and

Nationality Act of 1952 § 106(a)(2), *amended by* 8 U.S.C. § 1105a(a)(2) (1982).

**Facts**

Petitioners Kurt and his son Christian Perwolf are citizens of Austria who entered the United States under the status of nonimmigrant visitors on January 3, 1977, at New York, New York. Petitioner Hilda Perwolf, wife of Kurt Perwolf and also an Austrian citizen, entered the United States on April 25, 1977. Petitioners Perwolf overstayed their authorized visa periods, and admitted at a September 13, 1977, deportation hearing that they were deportable pursuant to the Immigration and Nationality Act of 1952 § 241(a)(2), *amended by* 8 U.S.C. § 1251(a)(2) (1982). Pending congressional action on a private immigration bill introduced on their behalfs, the immigration judge granted the Perwolfs a voluntary departure in lieu of deportation. The bill did not pass, the Perwolfs failed to depart voluntarily, and the Department of Justice issued warrants of deportation against the Perwolfs.

On March 3, 1983, the Perwolfs moved the Immigration and Naturalization Service to reopen and reconsider its 1977 deportation order. Petitioners' motion requested asylum [1] and adjustment of status to nonpreference business investors and lawful permanent residents. The immigration judge denied the motion and the Board dismissed the Perwolfs' appeal. This denial is presently before us on appeal.

Our standard of review of the denial of a motion to reopen and reconsider is limited to whether the Board abused its discretion in failing to reopen and reconsider the appeal. *Bae v. Immigration & Naturalization Service*, 706 F.2d 866, 869 (8th Cir.1983). We find no abuse of discretion in this case.

**Investor Status**

On appeal before the Board petitioners argued that, despite the unavailability

1. Petitioners' motion to reopen and reconsider alleged that they had not requested asylum prior to the completion of the deportation proceedings because the private immigration bill was still pending.

of nonpreference visas, they were entitled to submit nunc pro tunc applications for adjustment of status to that of investors. The Perwolfs claimed to fit within the class of aliens exempted under section 19 of the Immigration and Nationality Act Amendments of 1981, Pub.L. No. 97–116, 95 Stat. 1611 (1982) (the Amendments), from numerical limitations imposed by the Immigration and Nationality Act of 1952, §§ 201–202, *amended by* 8 U.S.C. §§ 1151–1152 (1982) on aliens acquiring immigrant visas or permanent resident status. Under section 19 of the Amendments, aliens in the United States on or before June 1, 1978, who: (1) qualified as nonpreference immigrants; (2) were, based on certain types of business investments, determined to be exempt from the Immigration and Nationality Act of 1952, § 212(a)(14), *amended by* 8 U.S.C. § 1182(a)(14) (1982), labor certification requirement; and (3) applied for adjustment of status to that of aliens lawfully admitted for permanent residence, were exempted from numerical limitations. Immigration and Nationality Act Amendments of 1981, Pub.L. No. 97–116, § 19, 95 Stat. 1611, 1621 (1981). The Board, however, determined that the Perwolfs neither applied for an adjustment of their status to that of investors nor qualified for the 8 C.F.R. § 212.8(b)(4) (1984) investor exemption from the labor certification requirement.

Petitioners also argued that the government was estopped from denying them investor status. The Perwolfs alleged that an official of the American Embassy in Vienna, Austria erroneously counseled them to wait until they had entered the United States before applying for the nonpreference investor visas. As the Board notes, however, no evidence or documentation was offered to support petitioners' allegation. Nor did the Perwolfs identify the consular official who gave the misleading advice.[2]

We hold the Board did not abuse its discretion in finding that the Perwolfs were not entitled to an investor exemption.

**Asylum**

■ We also agree that the Board was not required to reopen the hearings and accept asylum petitions and temporary withholding of deportation. To qualify for asylum and temporary withholding of deportation, the Perwolfs were required to establish that they were "refugees" in accordance with the Immigration and Nationality Act § 101(a)(42)(A), *amended by* 8 U.S.C. § 1101(a)(42)(A) (1982). This section defines a refugee as:

[A]ny person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion * * *.

Once refugee status is established, immediate family members may qualify under the Immigration and Nationality Act of 1952 § 207(c)(2), *amended by* 8 U.S.C. § 1157(c)(2) (1982).

Kurt Perwolf alleged that in the period before the Soviet invasion of Czechoslovakia he passed valuable information concerning Soviet military equipment to United States intelligence officers. Perwolf claimed that his life and those of his immediate family would be endangered if the Perwolfs returned to Austria. Perwolf contended that the Austrian government could not protect the family from retaliation by East Bloc intelligence agents. As pointed out by the Board, however, Perwolf resided in Austria for nine years after the invasion and apparently never suffered persecution or retaliation. The Perwolfs voluntarily chose Austria as the country to which they wished to be deported. Addi-

---

**2.** We need not, therefore, decide the issue of whether a consular official's misadvice constitutes affirmative misconduct which could estop the government.

tionally, the Perwolfs did not raise their asylum claims until deportation was imminent. Consequently, we agree with the Board that the Perwolfs did not meet their burden as set forth in the Immigration and Nationality Act of 1952 § 101(a)(42)(A), *amended by* 8 U.S.C. § 1101(a)(42)(A) (1982); *see Minwalla v. Immigration & Naturalization Service,* 706 F.2d 831, 834–35 (8th Cir.1983); *cf. Immigration & Naturalization Service v. Stevic,* —— U.S. ——, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984) (holding that an alien must establish a clear probability of persecution to avoid deportation under the Immigration and Nationality Act of 1952 § 243(h), *amended by* 8 U.S.C. 1253(h) (1982).[3]

**Conclusion**

We find no abuse of discretion and therefore affirm the denial to reopen and reconsider the deportation hearing. We further order that our mandate be stayed for sixty days from the date of this opinion to allow the Perwolfs to seek voluntary departure.

Affirmed.

---

**3.** Because we hold that the Perwolfs' asylum claims are without merit, we need not address the contention that 8 C.F.R. § 208.11 (1984), governing a motion to reconsider and reopen based on an asylum claim, violates the underlying statutory authority of the Refugee Act of 1980, Pub.L. No. 96–212, 94 Stat. 102.