5 F.3d 546
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Farzin KHAEFYAZDANI, Petitioner,
v.
IMMIGRATION & NATURALIZATION SERVICE, Respondent.
 No. 93-9514.
 United States Court of Appeals, Tenth Circuit.
 Aug. 25, 1993.
 
 Before LOGAN, MOORE and BRORBY, Circuit Judges.
 
 ORDER AND JUDGMENT[1]
 MOORE
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R.App. P. 34(a); 10th Cir. R. 34.1.9. The cause is therefore ordered submitted without oral argument.
 
 
 2
 This is an appeal from an order of the Board of Immigration Appeals adopting the findings and affirming the judgment of an Immigration Judge which denied asylum to Petitioner. After review of the record, we conclude there is substantial evidence to support the administrative determination Petitioner was not eligible for asylum. We affirm that judgment.
 
 
 3
 Petitioner is an Iranian citizen who entered the United States in 1985 as a nonimmigrant visitor. Upon the institution of the deportation proceedings, Petitioner admitted deportability, but applied for asylum because of her fear of persecution in Iran.
 
 
 4
 Petitioner's persecution claim centers on experiences she had while still in Iran and on perceived actions that might take place upon her return. Before the Immigration Judge, she testified that although she was born a Muslim, she did not adhere to the tenets of that faith. Consequently, before leaving Iran she had been stopped on the street and questioned for periods varying from a few minutes to five or six hours by the Revolutionary Guard, or Pasdarans. She stated she had been thus questioned about fifteen times. She asserted the Guard needed little reason to conduct these interrogations and supported that claim with documentation indicating women were subject to physical punishment for not wearing a chador, or veil.
 
 
 5
 Except for one occasion when she was stopped after attending a rally, Petitioner only had been detained for allegedly failing to strictly adhere to the Muslim code for the attire of women. Petitioner expressed concern that if she were returned to Iran, this harassment would continue.
 
 
 6
 Petitioner also claimed her residence and application for asylum in the United States would be used against her in Iran because the latter considers our country an enemy nation. She also believed political actions of a brother, who was granted asylum in the United States and later joined an anti-Iranian organization in Iraq, would be a source of persecution upon her return.
 
 
 7
 The Immigration Judge viewed these claims in light of the remaining evidence and concluded Petitioner had not sustained her burden of proof. The Judge first considered the fact that Petitioner's mother and siblings, whom he regarded as similarly situated individuals presently in Iran, have not been subjected to persecution. The Judge then turned to Petitioner's particular claims.
 
 
 8
 First, he noted, the harassment to which Petitioner had been exposed was typical of that experienced by all women in "the closed, totalitarian society." He found "women are stopped on the street for wearing make-up, having western dress on, not wearing the chador, and this results in a great deal of harassment. This is the same for any woman on the street in Iran."
 
 
 9
 The Judge consequently concluded Petitioner was not stopped and questioned because of her political activities or that of her brother. Indeed, he found when she was detained for questioning she was never asked about her brother. He therefore concluded so long as Petitioner refused to adhere to the dress code, she would be subjected to harassment for that reason alone.[2]
 
 
 10
 With respect to Petitioner's concern over the political activities of her brother, the Judge pointed out, if she were in jeopardy, it would have come about before she left Iran. Because the brother had emigrated three years before her departure from Iran, the absence of persecution during that time led the Judge to believe Petitioner's fears were unfounded. Indeed, he concluded those fears were mere speculation as were fears over her associations with the United States.
 
 
 11
 Although Petitioner believed there are Iranian spies who could learn of her efforts to obtain asylum, the Immigration Judge found no evidence Iranian officials were aware of those efforts. Moreover, Petitioner produced no evidence anyone had been arrested in Iran for seeking foreign asylum.
 
 
 12
 On the basis of those conclusions, the Immigration Judge denied asylum and ordered voluntary departure. If Petitioner failed to voluntarily return, the Judge ordered deportation to England, if that country would accept her, or Iran.
 
 
 13
 On appeal, the Board reviewed the record and agreed with the findings and conclusions of the Immigration Judge, adopting his reasoning as the basis for the Board's affirmance. This appeal followed.
 
 
 14
 It is Petitioner's burden to show she is qualified for asylum by demonstrating a well-founded fear of persecution in Iran because of race, religion, nationality, membership in a particular social group, or political activity. Nguyen v. INS, 991 F.2d 621, 625 (10th Cir.1993). If this burden is met, to succeed on appeal Petitioner must also show the Immigration Judge should have exercised his discretion to allow asylum. Id. at 625. An alien's fear must be genuine, Wojcik v. INS, 951 F.2d 172, 173 (8th Cir.1991), and must be established by "credible, direct, and specific evidence." Kapcia v. INS, 944 F.2d 702, 708 (10th Cir.1991). We review the underlying factual determinations for substantial evidence. Nguyen, 991 F.2d at 625. The standard we employ is extremely deferential, requiring affirmance unless the Petitioner demonstrates evidence so compelling no reasonable fact finder could fail to find fear of persecution. INS v. Elias-Zacarias, --- U.S. ----, 112 S.Ct. 812, 815 (1992).
 
 
 15
 Judged by these standards, we conclude the Immigration Judge properly resolved the case. There is substantial evidence to support his factual findings and the conclusion which flowed from those findings. We see no compelling evidence leading to the conclusion Petitioner will be subjected to anything more than the pitiful harassment Iranians visit upon any woman unwilling to accept the rigid demands of Muslim culture. Moreover, contrary to the argument of the Petitioner, the Board did not, in adopting the holding of the Immigration Judge, avoid a proper consideration of her appeal.
 
 
 16
 AFFIRMED.
 
 
 
 [1]
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R.36.3
 
 
 [2]
 Petitioner admitted she would not be harassed if she wore the prescribed clothing